**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
:
STEPHANIE CLEGG,                                : CIVIL ACTION
:
       Plaintiff,                              : Case No.:
:
       -against-                              : **COMPLAINT AND**
                                            : **JURY DEMAND**
:
SOTHEBY'S,                                      :
:
       Defendant.                             :
------------------------------------------------------------------X

      Plaintiff, STEPHANIE CLEGG, by and through her attorneys CARTER REICH, PC, as and for her Complaint against Defendant, SOTHEBY'S, alleges and asserts in support thereof as follows:

## NATURE OF THIS ACTION

      1.     This complaint involves Plaintiff's claim for damages and equitable relief against Sotheby's for its breach of fiduciary duty, gross negligence, breach of contract, and recission on account of unilateral mistake arising out of Plaintiff's agreement to consign Marc Chagall's *Le couple au bouquet de fleurs*, c.1950, Watercolor and gouache on paper, 10 1/4 x 7 1/8 in, signed "Marc Chagall" in the lower right (hereinafter "the Work") to Sotheby's in the fall of 2020.

      2.     Sotheby's selected the Work from Plaintiff's collection, urged Plaintiff to consign the Work, and promised to conduct additional authentication research before submitting the Work to the Comite Marc Chagall (hereinafter the "Comite") on Plaintiff's behalf. Sotheby's assured Plaintiff she had nothing to worry about.

1

3. On October 6, 2020, the Comite Marc Chagall (hereinafter the "Comite") issued an opinion that, although signed by the artist and vetted by Sotheby's on multiple prior occasions, the Work was not authentic. As such, the Comite requested the judicial seizure of the Work so that it can be destroyed.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between Plaintiff, a citizen of Florida, and Defendant, who is either a citizen of, or incorporated to do business in New York. The amount in controversy exceeds $75,000, exclusive of costs.

5. This Court has personal jurisdiction over Defendant pursuant to New York CPLR §§ 301 and 302(a) because Defendant transacted business in the Southern District of New York giving rise to the claims asserted herein.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and (c) because Defendant is a corporation located and headquartered in the Southern District of New York.

## PARTIES

7. The Plaintiff, Stephanie Clegg, is and has been a resident of the City of Naples, Lee County, Florida at all times relevant herein.

8. The Defendant maintains its corporate headquarters and principal place of business in the City, County and State of New York located at 1334 York Avenue, New York, New York 10021.

## **FACTS**

9. Plaintiff is, and has been at all relevant times, a customer of Sotheby's.

10. Over more than thirty years, Plaintiff individually, and jointly with her late husband, acquired and sold numerous of items of fine art at auctions conducted by Sotheby's, which was the only auction house patronized by the Plaintiff and her late husband.

11. Plaintiff and her late husband frequented exhibitions and auctions at Sotheby's and participated in auctions telephonically.

12. As a long-term customer of Sotheby's, Plaintiff and her late husband enjoyed viewing and access invitations and privileges at Sotheby's events.

13. As a long-term customer of Sotheby's, Plaintiff reasonably relied upon and placed trust and confidence in Sotheby's regarding the acquisition and sale of her artwork as well as other related matters.

14. As a long-term customer of Sotheby's, Plaintiff was frequently provided with information and advice concerning art available for purchase at upcoming auctions, invitations to special events, information concerning trends in art and various exhibitions which Sotheby's believed would interest the Plaintiff.

15. As a long-term customer of Sotheby's, Plaintiff was frequently provided with condition reports, advice and recommendations regarding purchases and sales, appraisals and market value of her artwork and other items. Plaintiff was also further provided with catalogues of upcoming auction sales without cost.

16. As a long-term customer of Sotheby's, Plaintiff and her late husband were visited

3

several times over the years at their home by their main contact at Sotheby's, Carolyn Nagy, a Vice President and head of Sotheby's Conshohocken, Pennsylvania office.

17. As a long-term customer of Sotheby's, Plaintiff was provided with recommendations concerning the management of her art collection, which Plaintiff employed and relied upon.

18. At all relevant times herein, Plaintiff reasonably relied on the advice, representations, and expertise of Sotheby's, its employees, agents, and representatives.

19. Plaintiff originally purchased the Work from Sotheby's in 1994 for $90,500.

20. At the time of the purchase in 1994, the Work was represented by Sotheby's as being an authentic work of Marc Chagall.

21. At the time of the purchase in 1994, Sotheby's did not inform the Plaintiff of the existence of the Comite or the need to have the Work authenticated.

22. In 2008, Sotheby's appraised the Work and valued it at $100,000, consistent with its purported authenticity.

23. In 2008, Sotheby's did not inform the Plaintiff of the existence of the Comite or the need to have the Work authenticated.

24. In 2008, the Sotheby's appraisal removed "Galerie Petrides, Paris" from the Work's provenance.

25. In 2020, Plaintiff approached Sotheby's about consigning artwork from her collection. Sotheby's reviewed the schedule of Plaintiff's artwork that they previously prepared and selected items that, in the opinion of Sotheby's, "would sell to their greatest financial

4

advantage…", including the Work.

26. In selecting the Work for consignment, Carolyn Nagy wrote to Plaintiff on March 10, 2020: "If you were inclined to include the Chagall … we would need to have those picked up fairly quickly so that we have time to conduct the additional authentication before our catalogue deadline in May."

27. Sotheby's not only specifically chose the Work for consignment, they urged Plaintiff to give them the work, writing to Plaintiff on May 6, 2020, that "we would love to pick these up" and noting that "[w]e have had some great success with Impressionist & Modern Art in the current [climate]," and that a recent sale "…did very well, selling above the high estimate."

28. Relying on Sotheby's strong recommendation, Plaintiff agreed to let Sotheby's pick up the Work from an art storage facility in Philadelphia soon thereafter so that Sotheby's could conduct additional authentication research as promised.

29. It was not until September 1, 2020, after Sotheby's had possession of the Work for several months, that Plaintiff was first informed of the existence of the Comite, or the possibility that the Work could be seized and destroyed if the Comite deemed it not authentic.

30. Sotheby's forwarded two documents to Plaintiff asking for her signature in advance of the Comite's scheduled meeting which by that point was only three weeks away.

31. The documents sent to Plaintiff by Sotheby's include "an internal Sotheby's waiver stating that the Chagall Committee may seize works they deem inauthentic [and] the Chagall Committee's application itself."

32. Plaintiff was surprised and concerned when she read this and she wrote to Carolyn Nagy on September 3, 2020, asking to speak with her before agreeing to submit the Work.

33. Plaintiff spoke to Carolyn Nagy and expressed concern over submitting the Work to the Comite. Plaintiff was falsely and recklessly assured by Sotheby's that the seizure of artworks by the Comite is a rare occurrence.

34. Plaintiff was also falsely and recklessly assured that the Work was indeed authentic and that she had "nothing to worry about."

35. These statements were either knowingly false or uttered with reckless disregard for their truth or falsity.

36. More importantly, Sotheby's represented that additional research would be conducted prior to submitting the Work to the Comite, and Plaintiff agreed to submit the Work based on these representations, but no additional research was performed despite the fact that Sotheby's had possession of the Work for months before shipping it to Paris.

37. Not only was no additional research performed by Sotheby's as promised, but Sotheby's also completely ignored and otherwise failed to alert Plaintiff of numerous "red flags" that Sotheby's knew or should have known about.

38. For instance, when Plaintiff purchased the Work in 1994 the provenance prepared by Sotheby's listed "L. Praeger, Paris; Galerie Petrides, Paris; Private Collection; and Achim Moeller Fine Art Limited, New York." As noted by the Comite, missing from the Provenance is the origin and date it was acquired by L. Praeger in Paris as well as the date the Work was

6

acquired by Achim Moeller Fine Art Limited in New York.

39. Naturally then, because Sotheby's promised to conduct additional authentication research, one would reasonably assume that this research would include contacting the prior owners to flesh out the provenance more fully. But Sotheby's did not conduct any additional research.

40. Indeed, had Sotheby's simply contacted Achim Moeller Fine Art in New York, as the New York Times did in the summer of 2022, they would have quickly learned that Achim Moeller has "no memory of being involved with that work…."[1]

41. Furthermore, at no time did Sotheby's inform the Plaintiff that Galerie Petrides in Paris, and more specifically its namesake Paul Petrides, had been convicted of selling a stolen art collection and sentenced to three years in prison.[2]

42. Not only did Sotheby's fail to inform Plaintiff of the Work's questionable provenance, when Sotheby's appraised the Work in 2008, and again in March 2020 when evaluating the Work for sale, "Galerie Petrides, Paris" was curiously omitted from the provenance.

43. As a long-term customer of Sotheby's, Plaintiff reasonably relied upon the aforesaid information, guidance and advice provided to her by Sotheby's.

44. Sotheby's knew or should have known that Plaintiff was relying upon its advice at all relevant times herein.

---

[1] https://www.nytimes.com/2022/07/06/arts/design/chagall-sothebys-expert-panel.html, last accessed February 24, 2023.
[2] https://www.washingtonpost.com/archive/lifestyle/1979/04/18/broken-art-theft-pipeline/ffb7bb02-1c01-4b74-bc79-cf82de3e7d63/, last accessed February 24, 2023.

45. As a result of Sotheby's breach of fiduciary duty, gross negligence and breach of contract, Plaintiff has sustained damages in excess of $175,000, in an exact amount to be determined at trial.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

46. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs "1" through "45", inclusive, as if fully set forth herein.

47. It is well established that an auction house such as Sotheby's acts as an agent for its Consignors.

48. It is undisputed that Sotheby's acted as Plaintiff's agent in submitting the Work to the Comite on her behalf.

49. As her agent, Sotheby's owed Plaintiff a fiduciary duty to act with the utmost good faith and in the best interests of the Plaintiff.

50. Sotheby's breached its fiduciary duty to Plaintiff by failing to conduct additional research before submitting the Work to the Comite despite assuring Plaintiff that this additional research would be conducted.

51. Sotheby's breached its fiduciary duty by failing to truthfully and accurately inform her of the prevalence by which the Comite seized artworks, as well as to alert her of the potential issues with the Work, including its sparse provenance, which included a felon well-known to Sotheby's.

52. Sotheby's breached its fiduciary duty by failing to defend Plaintiff's interests before the Comite and in failing to defend the authenticity of the Work, which is signed by the artist.

8

53. By reason thereof, Plaintiff has incurred damages in excess of $175,000, in an exact amount to be determined at trial.

54. By reason thereof, Plaintiff is also entitled to an award of punitive damages, costs and attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Gross Negligence)**

55. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs "1" through "54", inclusive, as if fully set forth herein.

56. Sotheby's owed Plaintiff a duty to exercise the standard of care that a reasonably prudent auction house and consignee would exercise in a similar situation.

57. Sotheby's owed Plaintiff a duty of reasonable care that included the duty to do what Sotheby's promised, namely, to conduct additional research before submitting the Work to the Comite.

58. Sotheby's owed Plaintiff a duty of reasonable care that included the duty to truthfully and accurately inform her of the prevalence by which the Comite seized artworks it deemed inauthentic, as well as to alert her of the potential issues with the Work, including its sparse provenance, which included a felon well-known to Sotheby's.

59. Sotheby's breached these duties and failed to exercise reasonable care by failing to conduct any additional research, and in failing to alert Plaintiff about the Work's sparse provenance as well as other red flags.

60. Sotheby's conduct is so careless as to demonstrate a complete and/or grossly negligent disregard of the rights of Plaintiff.

61. Sotheby's conduct evinces such a reckless disregard for Plaintiff's rights that it smacks of intentional wrongdoing.

62. By reason thereof, Plaintiff has incurred damages in excess of $175,000, in an exact amount to be determined at trial.

63. By reason thereof, Plaintiff is also entitled to an award of punitive damages, costs and attorney's fees.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract)

64. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs "1" through "63", inclusive, as if fully set forth herein.

65. An agreement existed between Sotheby's and Plaintiff by which Sotheby's agreed to conduct additional research before submitting the Work to the Comite.

66. Based on this promise, Plaintiff allowed Sotheby's to pick up the Work months before Sotheby's presented her with aforementioned waiver and Comite application.

67. Sotheby's failed, refused, and/or otherwise neglected to conduct any additional research despite having ample opportunity to do so, constituting a material breach of the agreement between the parties.

68. At all relevant times Plaintiff complied with the terms of the agreement.

69. As a direct and proximate cause of Sotheby's breach of the agreement, Plaintiff has incurred damages in excess of $175,000, in an exact amount to be determined at trial.

[continued]

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Breach of the Covenant of**
**Good Faith and Fair Dealing)**

70. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs "1" through "69", inclusive, as if fully set forth herein.

71. As a result of the aforementioned agreement that existed between Plaintiff and Sotheby's, Sotheby's was and is required to discharge their obligations in good faith.

72. Sotheby's failed to discharge their obligations in good faith by failing to conduct any additional research as promised despite ample opportunity to do so; and, by failing to alert Plaintiff of potential red flags with the Work's provenance, even going so far as to launder the provenance by removing any reference to Galerie Petrides in Paris.

73. As a direct and proximate cause of Sotheby's breach of this duty, Plaintiff has incurred damages in excess of $175,000, in an exact amount to be determined at trial.

74. By reason thereof, Plaintiff is also entitled to an award of punitive damages, costs and attorney's fees.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Unilateral Mistake)**

75. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs "1" through "74", inclusive, as if fully set forth herein.

76. A unilateral mistake existed by virtue of Plaintiff's mistaken belief that Sotheby's would conduct additional authentication research, as promised by Sotheby's.

77. A unilateral mistake existed by virtue of Plaintiff's mistaken belief that the Comite rarely seizes works as falsely represented to her by Sotheby's.

78. A unilateral mistake existed by virtue of Plaintiff's mistaken belief that Sotheby's,

11

acting as her agent, would act in the utmost good faith, defend her best interests, and defend the authenticity of the Work.

79. Sotheby's knew that Plaintiff was agreeing to submit the work to the Comite under these mistaken beliefs.

80. Plaintiff could not have ascertained the truth of her mistaken beliefs at the time she agreed to submit the Work because such information was in the exclusive possession of Sotheby's, who repeatedly concealed and misrepresented facts to the Plaintiff.

81. Plaintiff otherwise performed all of her obligations under the agreements described herein.

82. That by reason of the foregoing, it would be against equity and good conscience to permit Sotheby's to maintain the benefits of any of the aforementioned agreements that existed between the parties, namely, the agreement by which Sotheby's agreed to conduct additional research, the waiver signed by Plaintiff and any consignment agreement. Therefore, these agreements should be rescinded, and adequate damages should be awarded in excess of $175,000, in an exact amount to be determined at trial.

83. By reason thereof, Plaintiff is also entitled to an award of punitive damages, costs and attorney's fees.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(Equitable Recission)**

84. Plaintiffs repeats and re-alleges the allegations set forth in "1" through "83", inclusive, as if full set forth herein.

85. Sotheby's false and reckless representations to Plaintiff as well as the concealment of facts concerning the Comite and the Work itself, were material facts.

86. Sotheby's false and reckless representations to Plaintiffs were intentionally and knowingly made and were calculated to induce Plaintiff into consigning the work to Sotheby's and submitting it to the Comite.

87. Plaintiff relied on Sotheby's representations and omissions in agreeing to consign the Work to Sotheby's and submit it to the Comite; and, in particular in agreeing to sign the Sotheby's waiver.

88. By Reason of the foregoing, it would be against equity and good conscience to allow Sotheby's to maintain the benefits of their waiver.

89. Plaintiff is entitled to rescission of the waiver.

90. Plaintiff has no adequate remedy at law.

## CONCLUSION AND DEMAND

**WHEREFORE,** Plaintiff, STEPHANIE CLEGG, demands judgment as follows:

A. On Plaintiff's First Cause of Action, compensatory damages in excess of $175,000, in an exact amount to be determined at trial, including punitive damages, costs and attorney's fees.

B. On Plaintiff's Second Cause of Action, compensatory damages in excess of $175,000, in an exact amount to be determined at trial, including punitive damages, costs and attorney's fees.

C. On Plaintiff's Third Cause of Action, compensatory damages in excess of $175,000, in an exact amount to be determined at trial.

D. On Plaintiff's Fourth Cause of Action, compensatory damages in excess of $175,000, in an exact amount to be determined at trial, including punitive damages, costs and attorney's fees.

E. On Plaintiff's Fifth Cause of Action, recission of the agreements between the parties and damages in excess of $175,000, in an exact amount to be determined at trial, including punitive damages, costs and attorney's fees.

F. On Plaintiff's Sixth Cause of Action, recission of the Sotheby's waiver.

G. Granting Plaintiff such other and further relief as the Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury on all issues so triable against the Defendant.

Dated: New York, New York
March 8, 2023

        **CARTER REICH, PC**

By: */s/ Carter A. Reich*
Carter A. Reich, Esq.
*Attorneys for Plaintiff*
STEPHANIE CLEGG
246 5th Avenue, Suite 508
New York, New York 10001
(917) 615-0978
creich@reich.legal

Defendant:
SOTHEBY'S
1334 York Avenue
New York, NY 10021